## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

_____

|  |  |  |
|---|---|---|
| **AMELDA STATON** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Civil Action No.** |
| **FQSR, LLC d/b/a KBP FOODS** | ) | **JURY TRIAL DEMAND** |
| 10950 Grandview Drive, Suite 300 | ) | |
| Overland Park, Kansas 66210 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **WAYNE GOODWIN** | ) | |
| 6813 West Forrest Road, Apt. 201 | ) | |
| Landover MD 20785 | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### COMPLAINT AND JURY DEMAND

Plaintiff Amelda Staton brings this suit against her former employers, Defendant FQSR, LLC d/b/a KBP Foods ("KBP") and Defendant Wayne Goodwin ("Goodwin"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't 20-606 (a), and Maryland common law for redress of injuries suffered due to sexual harassment, sexual assault, and retaliation.   Accordingly, Plaintiff seeks declaratory, equitable, and monetary relief.

### JURISDICTION & VENUE

1.      Federal jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.   The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the

Plaintiff's Maryland claims because the state and federal claims derive from a common nucleus of operative facts and are such that plaintiff would ordinarily be expected to try them all in one judicial proceeding.

2.     Venue in this district is proper pursuant to 28 U.S.C § 1391 and 42. Venue is also proper under U.S.C. § 2000e-5(f), as the claims presented arose, and the unlawful employment practices complained of occurred, in Charles County, Maryland which is within this judicial district.

## PARTIES

3.     Plaintiff Ms. Staton is a female who, at all times relevant to this Complaint, was a Maryland resident and an employee of the Defendants, performing her duties in Maryland.

4.     Defendant KBP is a corporation formed under the laws of the state of Delaware, with one of its Maryland KFC restaurants at 6665 Crain Hwy, La Plata, MD 20646.  Defendant KBP operates from its headquarters at 10950 Grandview Drive, Suite 300, Overland Parks, Kansas 66210.  Defendant KBP has been named one of the ten fastest growing restaurant franchisees in North America and operates over 700 KFC and YUM! Brands, Inc. restaurants across 25 states throughout the United States.

5.     Defendant KBP is an employer within the meaning of the Maryland Fair Employment Practices Act and Title VII of the Civil Rights Act of 1964.

6.     Defendant Goodwin was the General Manager of the KFC at 6665 Crain Hwy, La Plata, MD 20646, and was subsequently demoted to the position of manager.   At all times relevant to this Complaint, Defendant Goodwin worked as Plaintiff's supervisor.  He is a resident of the state of Maryland.

2

## ADMINISTRATIVE PROCEEDINGS

7.      On June 30, 2020, Ms. Staton timely filed a Charge of Discrimination with the U.S. Equal Opportunity Commission (EEOC) for sexual harassment and retaliation.  On November 4, 2022, Ms. Staton received a Notice of Right to Sue from the EEOC.  This Complaint has been filed within 90 days of her receipt of this Notice.

8.      Under the work-sharing agreement between the EEOC and the Maryland Commission on Civil Rights, timely-filed EEOC Charges are deemed cross-filed with Maryland Commission on Civil Rights.

9.      Ms. Staton has exhausted her administrative remedies with regard to Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act.

## FACTS

10.     On or around January 9, 2020, Ms. Staton was interviewed by Goodwin for a job at the KFC in La Plata, MD, located at 6665 Crain Highway.  Ms. Staton was hired by the General Manager, Dorothy Emerson, and began working at the KFC on January 14, 2020.

11.     Ms. Staton was 17 years old when she began working at KFC.

12.     When Ms. Staton first started working at KFC, Ms. Emerson told her that she had to refer to Ms. Emerson as her "Mommy," and that she had to refer to Goodwin as her "Daddy."

13.     Regarding Goodwin, Ms. Emerson told her, "Listen to your father. You have to respect him.  That's your daddy."  However, Ms. Staton refused to call

Dorothy "Mommy" or Goodwin "Daddy" because it was so degrading, especially to call her older male boss "Daddy."

14.     While she was working a shift with Ms. Staton, Ms. Emerson took alcohol from a man who went through the drive-thru and passed out cups of alcohol to her own employees during work hours.  Ms. Emerson offered alcohol to Ms. Staton, even though she knew Ms. Staton was underage.  Ms. Staton refused.

15.     On or around January 18, 2020, Ms. Staton's mother came to the KFC while she was working.  When Goodwin saw her mother, he told Ms. Staton, "You're pretty like your mom."

16.     Later, on January 18, 2020, Goodwin came up so close behind Ms. Staton that she could feel his mouth and breath in her ear as he told her she was "beautiful."  This was unwanted and made Ms. Staton feel unsafe.  Afterwards, Ms. Staton's female co-worker, Laniya Williams, told Ms. Staton that Goodwin behaved inappropriately like this towards female employees all the time.

17.     Goodwin routinely called Ms. Staton, as well as other female co-workers, "cutie pie," "princess," beautiful," "my baby," "gorgeous," and "sweetheart." Ms. Staton told him, "I have told you multiple times that my name is Amelda.  Address me by my name."  Goodwin just ignored Ms. Staton and continued to harass her.

18.     Goodwin was in charge of making Ms. Staton's schedule and he went out of his way to ensure that she worked alongside him 5-6 days a week.  During their shifts together, he constantly moved into her path as she was walking through the kitchen so that he could rub himself up against her.  During their shifts, he also tried to hug Ms. Staton and often put her in a bear hug and would not let her

escape.  She told him to stop groping her, but he continued to put his hands on her shoulders and around her waist.

19.     During their shifts, Goodwin put his face so close to Ms. Staton's that she was afraid he was going to kiss her.

20.     During Ms. Staton's shifts with Goodwin, he grabbed her hand and interlocked his fingers with hers.  She would immediately try to pull her hand away, but he grabbed her and called her his "baby" while he pressed himself against her and hugged her against her will.  Goodwin tightly locked his arms around her, and she was not able to escape no matter how hard she tried.  She told him, "Get off of me!  I don't like people touching me!"

21.     On or around February 15, 2020, Goodwin intentionally rubbed up against Ms. Staton's butt with his body and hands as he walked past her.  She immediately told him not to touch her.  He continued to grope her and rub up against her butt on multiple occasions after this, even though she told him not to.

22.     On many occasions during their shifts together, Ms. Staton caught Goodwin staring at her butt.

23.     Goodwin once came up behind Ms. Staton and rubbed his penis against her butt.  She immediately yelled at him, "You need to back up off me now! I do not like it!  I am a female, move!"  Goodwin walked away laughing at her.

24.     On several occasions when Ms. Staton was on her break and using her phone, Goodwin tried to take her phone away from her to see who she was talking to.  He snatched her phone out of her hands and ran away with it to zoom in on pictures of her.  She told him to give her phone back whenever he did this.

25.     Whenever Ms. Staton told Goodwin to stop groping her and stop getting too close to her, he just insisted, "No, you're fine," or he laughed at her.

26.     On or around April 25, 2020, Ms. Staton complained to Martin Jennings, the fry cook, about how Goodwin had been groping her against her will and rubbing his penis up against her body.  Martin did not do anything to protect her.

27.     Goodwin retaliated against Ms. Staton for refusing his advances and telling him to stop groping her by forcing her to wash dishes for up to 5 hours at a time.  He did not make other employees do this.  Many times, while Ms. Staton was washing dishes, Goodwin came up next to her and put his arm around her shoulder.  He rubbed his hand up and down her body and touched the side of her breast and asked her, "Are you okay cutie pie?"  She yelled at him, "You need to back off or you're gonna get knocked in your face."

28.     On or around May 11, 2020, Ms. Staton sat in the dining area to do work on her computer during her break.  Goodwin sat down beside her and repeatedly stroked her thigh and called her "beautiful."  She yelled at him, "Don't touch me!" but he kept groping her thigh, so she had to get up and walk away.

29.     Goodwin erupted into a fit of anger whenever Ms. Staton told him to stop groping and harassing her.  He screamed curse words at her in Jamaican. Goodwin also slammed the chicken trays when she told him to stop groping and harassing her, and at one point, even hit her with a hot chicken tray from the oven. This left a painful burn on her left wrist, resulting in a scar.

30.     Whenever Ms. Staton told Goodwin to stop groping and harassing her, he would also retaliate by sending her home early so she lost hours and pay.

6

31.    Ms. Staton confided in her female co-worker, Kennedy Emory, that Goodwin was constantly sexually harassing and sexually assaulting her.   Ms. Emory told Ms. Staton that Goodwin groped her and sexually harassed her as well.

32.    The last day Ms. Staton worked at KFC was on or around May 14, 2020.  On that day, Goodwin came up behind her.  He held her by her hips and put his hand around her shoulder.  He turned her around, so they were face to face, a few inches apart.  She told him to stop, but he said, "You don't want to be touched?" in a mocking tone.  Before she could push him away, he reached down into her bra and fondled her breast.  Ms. Staton tried to run away and picked up her bag to escape from Goodwin. She got her bag and immediately left KFC to go home. The same day, Kennedy Emory sent Ms. Staton a text message that said he groped her as well.

33.    Ms. Staton felt violated and scared because of the way Goodwin groped her, pressed his body against her and ignored her complaints. As she went home that night on or around May 14, 2020, she could no longer take the pain and humiliation from Goodwin's sexual harassment and physical assaults.   She constantly felt violated and unsafe going to her job.  When she got home, she told her mother that Goodwin sexually assaulted her and harassed her during her shifts.

34.    Ms. Staton and her mother called Ms. Emerson to complain about Goodwin.  Ms. Staton told Ms. Emerson that Goodwin sexually harassed and sexually assaulted both her and Kennedy Emory.  Ms. Emerson arranged a three-way call with Ms. Emory.  During the call, Ms. Emerson shouted at Ms. Staton and Ms. Emory while Ms. Staton's mother was on the line.

35.     During this call, Ms. Emerson defended Goodwin.  Ms. Emerson said to Ms. Staton's mother, "But he is a Christian and has a wife.  I know how you feel because I have a daughter too, but I always tell him to keep his hands off the girls." Instead of trying to help or investigate their complaint, Ms. Emerson blamed Ms. Staton and Ms. Emory and said that they "should have known better" and "should have come to [her]."

36.     After the phone call with Ms. Emerson, Ms. Staton's mother went to the KFC to meet Ms. Emerson and Goodwin in person.  When Ms. Staton's mother confronted Goodwin, he did not deny that he sexually harassed and sexually assaulted Ms. Staton.  He claimed that he is a Christian, that he has daughters, and that he was sorry.

37.     As this was not the first time Ms. Emerson had to respond to sexual assault claims against Goodwin, she became angry with him and said, "The last time this happened to Ajanae, I pulled him outside with Ajanae and I squashed it."

38.     Ajanae Swinney was a former co-worker of Ms. Staton who was also sexually harassed and groped by Goodwin.  Ms. Swinney complained to Ms. Emerson about the harassment she faced in early 2020.  She told Ms. Emerson that she did not want to work with Goodwin anymore.  In response, Ms. Emerson took Ms. Swinney and Goodwin into the KFC parking lot and told Ms. Swinney that she needed to "respect" Goodwin and that they needed to "work together as a family."  Ms. Emerson knew that Goodwin was groping and rubbing himself against Ms. Swinney, but she never told him to stop.  Goodwin continued to harass and assault Ms. Swinney, which forced her to involuntarily quit in or around June 2020.

39.     Ms. Emerson was aware that Goodwin was a sexual predator, but she allowed him to continue working at KFC.

40.     After Ms. Staton's mother left the KFC on or around May 14, 2020, Martin Jennings told Ms. Emerson that Ms. Staton had previously complained to him about Goodwin's constant sexual harassment.

41.     On or around May 14, 2020, Ms. Staton called the police and spoke to Officer Foster of the Charles County Police Department.  Officer Foster took her statement and filled out a police report.

42.     At or around 9:543pm, May 14, 2020, Ms. Staton's mother called the KBP district manager, Tom Chalkley.  During this phone call, Mr. Chalkley said, "What's the big deal if Wayne touched Amelda's shoulder?"  Tom refused to take the situation seriously, and abruptly ended the conversation stating that it was 10pm and he was "sleepy."

43.     On or about May 16, 2020, Ms. Staton's mother called KFC Customer Service to complain that Goodwin sexually assaulted and sexually harassed Ms. Staton, and that the general manager and district manager refused to address the complaint or stop the harassment. Neither Ms. Staton nor her mother ever received any response from KFC Customer Service regarding Ms. Staton's complaint.

44.     On or about May 19, 2020, Ms. Staton's mother called KFC Customer Service again and was told that Ms. Staton's complaint had already been closed without any explanation.  Ms. Staton's mother re-opened the complaint.

45.     Ms. Staton's mother called KFC Human Resources and left a voicemail regarding Ms. Staton's sexual harassment and sexual assault complaint,

but no one returned her call.   To this day, neither Ms. Staton nor her mother have been contacted by anyone regarding Ms. Staton's complaint.

46.     Ms. Staton was subsequently constructively discharged from her employment at KFC, given that no corrective action was taken to remedy the routine sexual assaults and harassment she had been experiencing, and no reasonable employee could endure such a hostile work environment.

## COUNT I

**CLAIM OF AMELDA STATON AGAINST DEFENDANT KBP (TITLE VII – SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT)**

47.     Plaintiff Staton incorporates by reference and re-alleges each of the preceding paragraphs of the Complaint.

48.     Defendant Goodwin's comments to and repeated assaults on Ms. Staton were unwelcome.

49.     Defendant Goodwin's comments to and repeated assaults on Ms. Staton were offensive.

50.     Defendant Goodwin's comments to and repeated assaults on Ms. Staton were based on sex.

51.     Defendant Goodwin's comments to and repeated assaults on Ms. Staton were sufficiently severe and pervasive to alter the terms, conditions, and privileges of her employment, and to create an abusive, intimidating, hostile, and offensive working environment.

52.     Defendant Goodwin, at all relevant times, remained Ms. Staton's direct supervisor as the General Manager of the La Plata KFC.

53.     Defendant Goodwin's conduct constitutes sexual harassment based on sex in violation of §703 of Title VII of the Civil Rights act of 1964, 42 U.S.C. §2000e-2.

54.     Defendant Goodwin was acting within the scope of his employment with Defendant KBP at the time he engaged in harassment against Ms. Staton.

55.     Defendant Goodwin was at all times acting as Defendant KBP's agent.

56.     Defendant Goodwin had authority, delegated by Defendant KBP, over the terms and conditions of Ms. Staton's employment.

57.     Defendant KBP had actual and constructive knowledge of Defendant Goodwin's sexual harassment of and discrimination against Ms. Staton and others, while failing to take remedial action of any kind whatsoever.

58.     Defendant KBP's practices described above have caused Ms. Staton's harm, including lost earnings and benefits and severe emotional distress.

59.     Defendant KBP engaged in the practices described above with actual malice or with callous or reckless disregard to Ms. Staton's federally protected rights under Title VII.

60.     Defendant KBP is liable for its violation of §703 of Title VII of the Civil Rights act of 1964, 42 U.S.C. §2000e-2.

## COUNT II

### CLAIM OF AMELDA STATON AGAINST DEFENDANT KBP (TITLE VII – RETALIATION)

61.     Plaintiff Staton incorporates by reference and re-alleges each of the preceding paragraphs of the Complaint.

62.    Ms. Staton's conversations with co-workers and complaints to Defendant Goodwin and Ms. Emerson expressed her opposition to employment practices made unlawful by Title VII, specifically, sexual harassment and assault. These conversations, as well as her rejection of Defendant Goodwin's sexual advances, constituted protected activity under Title VII.

63.    In response to Ms. Staton's complaints about sexual harassment and her rejection of Defendant Goodwin's sexual advances, Defendant KBP, by its agent Defendant Goodwin, changed the terms and conditions of Ms. Staton's employment by violently assaulting her, sending her home early so she lost hours and pay, as well as by forcing her to wash dishes for five hours at a time as punishment for complaining about sexual harassment, and ultimately by constructively discharging her in retaliation for her opposition to unlawful employment practices, in violation of §704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a).

64.    Defendant KBP had actual and constructive knowledge that Ms. Staton's reduction in hours, punishment, and constructive discharge was based upon her opposition to unlawful employment practices.

65.    Defendant KBP's unlawful retaliation described above has caused Ms. Staton harm, including lost earnings and benefits and severe emotional distress.

66.    Defendant KBP is liable for its violation of §704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a).

67.     Defendant KBP engaged in the retaliatory practices described above with actual malice or with callous or reckless disregard to Ms. Staton's protected rights under Title VII.

## COUNT III

### CLAIM OF AMELDA STATON AGAINST DEFENDANT WAYNE GOODWIN (BATTERY)

68.     Plaintiff Staton incorporates by reference and re-alleges each of the preceding paragraphs of the Complaint.

69.     From about January 2020 to about May 2020, Defendant Goodwin repeatedly touched Ms. Staton without her consent.

70.     On several occasions, Defendant Goodwin grabbed and otherwise touched Ms. Staton's hands, arms, wrists, shoulder, waist, breasts, and butt, which constituted unwelcome and unconsented touching.

71.     Defendant Goodwin's touching was extremely offensive and harmful to Ms. Staton.

72.     Defendant Goodwin's touching of Ms. Staton was intentional and was performed with malice or reckless disregard for the rights, safety, and well-being of Ms. Staton, even causing Ms. Staton to call the police to file a report.

73.     As a direct and proximate result of Defendant Goodwin's conduct, Ms. Staton suffered pain and injury, including but not limited to permanent physical scarring, extreme mental anguish, distress, embarrassment and humiliation, and fear for her safety and reputation.

<u>**COUNT IV**</u>

**CLAIM OF AMELDA STATON AGAINST DEFENDANT KBP
(MARYLAND FAIR EMPLOYMENT PRACTICES ACT – SEXUAL
HARASSMENT AND HOSTILE WORK ENVIRONMENT)**

74.     Plaintiff Staton incorporates by reference and re-alleges each of the preceding paragraphs of the Complaint.

75.     Defendant Goodwin's comments to and assaults on Ms. Staton were unwelcome.

76.     Defendant Goodwin's comments to and repeated assaults on Ms. Staton were offensive.

77.     Defendant Goodwin's comments to and assaults on Ms. Staton were based on sex.

78.     Defendant Goodwin's comments to and assaults on Ms. Staton were sufficiently severe and pervasive to alter the terms, conditions, and privileges of her employment, and to create an abusive, intimidating, hostile, and offensive working environment.

79.     Defendant Goodwin, at all relevant times, remained Ms. Staton's direct supervisor as the General Manager of the La Plata KFC.

80.     Defendant Goodwin's conduct constitutes sexual harassment based on sex in violation of the Maryland Fair Employment Practices Act.

81.     Defendant Goodwin was acting within the scope of his employment with Defendant KBP at the time he engaged in sexual harassment of Ms. Staton.

82.     Defendant Goodwin was at all times acting as Defendant KBP's agent.

14

83.     Defendant Goodwin had authority, delegated by Defendant KBP, over the terms and conditions of Ms. Staton's employment.

84.     Defendant KBP had actual and constructive knowledge of Defendant Goodwin's sexual harassment of Ms. Staton and others, while failing to take remedial action of any kind whatsoever.

85.     Defendant KBP's practices described above have caused Ms. Staton's harm, including lost earnings and benefits and severe emotional distress.

86.     Defendant KBP engaged in the practices described above with actual malice or with callous or reckless disregard to Ms. Staton's federally protected rights under the Maryland Fair Employment Practices Act.

87.     Defendant KBP is liable for its violation of Maryland Fair Employment Practices Act.

## COUNT V

### CLAIM OF AMELDA STATON AGAINST DEFENDANT KBP (MARYLAND FAIR EMPLOYMENT PRACTICES ACT – RETALIATION)

88.     Plaintiff Staton incorporates by reference and re-alleges each of the preceding paragraphs of the Complaint.

89.     Ms. Staton's conversations with co-workers and complaints to Defendant Goodwin and Ms. Emerson expressed her opposition to employment practices made unlawful by the Maryland Fair Employment Practices Act, specifically, sexual harassment.  These conversations, as well as her rejection of Defendant Goodwin's sexual advances, constituted protected activity under the Maryland Fair Employment Practices Act.

90.    In response to Ms. Staton's complaints about sexual harassment, as well as her rejection of Defendant Goodwin's sexual advances, Defendant KBP, by its agent Defendant Goodwin, changed the terms and conditions of Ms. Staton's employment by violently assaulting her, sending her home early so she lost hours and pay, as well as by forcing her to wash dishes for five hours at a time as punishment for complaining about sexual harassment, and ultimately constructively discharging her in retaliation for her opposition to unlawful employment practices, in violation of the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't 20-606 (f).

91.    Defendant KBP had actual and constructive knowledge that Ms. Staton's reduction in hours, punishment, and constructive discharge was based up9on her opposition to unlawful employment practices.

92.    Defendant KBP's unlawful retaliation described above has cause Ms. Staton harm, including lost earnings and benefits and severe emotional distress.

93.    Defendant KBP is liable for its violation of the Maryland Fair Employment Practices Act.

94.    Defendant KBP engaged in the discriminatory practices described above with actual malice or with callous or reckless disregard to Ms. Staton's protected rights under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't 20-606 (f).

## COUNT VI

### PLAINTIFF AMELDA STATON'S CLAIMS AGAINST DEFENDANTS KBP FOODS (NEGLIGENT RETENTION OF EMPLOYEE)

95.    Plaintiff Staton incorporates by reference and re-alleges each of the preceding paragraphs of the Complaint.

96.    From about February 2019 to the present, Defendant KBP has employed Defendant Goodwin as manager of the La Plata KFC.

97.    During his employment by Defendant KBP, Defendant Goodwin made public sexual comments, innuendos, threats, and suggestions to the Plaintiff soliciting sexual relations.

98.    During his employment by Defendant KBP, Defendant Goodwin committed assault and battery against Plaintiff Staton and other female employees.

99.    Defendant KBP had a duty to use reasonable care to select an employee who was competent and fit to perform the duties of a manager. Defendant KBP had actual and constructive knowledge of Defendant Goodwin's history of and propensity for engaging in conduct intended to sexually harass, threaten, and frighten female employees.

100.   Defendant KBP ignored Defendant Goodwin's conduct and statements which constituted sexual harassment, and failed to use due care to protect its employees from such conduct.

101.   Defendant KBP knew, or should have known, that Defendant Goodwin would be likely to engage again in conduct that would sexually harass, threaten, or frighten KBP female employees.

102.   Plaintiff Staton was a KBP employee who would foreseeably come into contact with Defendant Goodwin.  Defendant KBP therefore had a duty to Plaintiff Staton, and such duty was breached by KBP.

103.   Because Defendant Goodwin had a history of engaging in conduct intended to sexually harass, threaten, and frighten KBP female employees, the risk of Defendant Goodwin committing such acts against Plaintiff was foreseeable.

104.   Defendants KBP knew, or should have known, that Defendant Goodwin was not competent or fit to perform the duties of store manager and assistant manager.  Defendant KBP breached its duty to use reasonable care to select and retain an employee who was competent and fit for a managerial position.

105.   As a direct and proximate result of Defendant KBP's negligence in hiring and its retention of Defendant Goodwin in the position of Manager, Plaintiff Staton was assaulted and battered by Defendant Goodwin.

106.   As a direct and proximate result of Defendant KBP's negligence in hiring and its retention of Defendant Goodwin in the position of Manager, Plaintiff Staton was sexually harassed by Defendant Goodwin.

107.   As a direct and proximate result of Defendant KBP's negligence in hiring and its retention of Defendant Goodwin in the position of Manager, Plaintiff Staton suffered physical injury, extreme mental anguish, distress, anxiety, embarrassment and humiliation, and became nervous and fearful for her safety and reputation.

108.   Defendant KBP authorized and ratified the sexual harassment and assault committed against Plaintiff Staton, and was reckless or wanton in the retention of Defendant Goodwin in a managerial position at KBP.

## JURY DEMAND

1.      Pursuant to the Federal Rule of Civil Procedure 38(b), and 42 U.S.C. §1981a(c), Plaintiff Staton demands a jury trial of all issues so triable in this matter.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that the Court grant the following relief against KBP Foods and Defendant Wayne Goodwin:

AS TO COUNT I
CLAIM OF AMELDA STATON AGASINST DEFENDANT KBP (TITLE VII – SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT)

1. An injunction:

    a. Enjoining KBP, its officers, successor, and assigns, and all persons in active concert or participation with it, from engaging in any employment practice that discriminates on the basis of sex.

    b. Requiring KBP to pay Plaintiff Staton back pay and other benefits in an amount appropriate to proof at trial.

2. Find that Defendant KBP is liable for sexually harassing and creating a hostile work environment against Plaintiff Staton.

3. An Award of compensatory damages for Plaintiff Staton's past and future pain and suffering and loss of enjoyment of life in an amount appropriate to proof at trial.

4. An Award of punitive damages for Defendant's malicious and intentional or callously and recklessly indifferent conduct in an amount appropriate to proof at trial.

5. An Award of reasonable attorney's fees and costs.

6. An Award of such other just and equitable relief as this court deems fit.

## AS TO COUNT II
## CLAIM OF AMELDA STATON AGAINST KBP FOODS (TITLE VII – RETALIATION)

1. An injunction:

    c. Enjoining KBP, its officers, successor, and assigns, and all persons in active concert or participation with it, from engaging in any employment practice that retaliates on the basis of protected activity.

    d. Requiring KBP to pay Plaintiff Staton back pay and other benefits in an amount appropriate to proof at trial.

2. Find that Defendant KBP is liable for retaliation against Plaintiff Staton.

3. An Award of compensatory damages for Plaintiff Staton's past and future pain and suffering and loss of enjoyment of life in an amount appropriate to proof at trial.

4. An Award of punitive damages for Defendant's malicious and intentional or callously and recklessly indifferent conduct in an amount appropriate to proof at trial.

5. An Award of reasonable attorney's fees and costs.

6. An Award of such other just and equitable relief as this court deems fit.

## AS TO COUNT III
## CLAIM OF AMELDA STATON AGAINST DEFENDANT WAYNE GOODWIN (BATTERY)

1. That Defendant Goodwin is liable for battery against Plaintiff Staton.

2. An Award to Plaintiff Staton of compensatory damages in an amount appropriate to the proof at trial.

3. An Award to Plaintiff Staton of punitive damages in an amount appropriate to the proof at trial.

4. An Award of reasonable attorney's fees and costs.

5. An Award of such other just and equitable relief as this court deems fit.

### AS TO COUNT IV
### CLAIM OF AMELDA STATON AGAINST KBP FOODS (MARYLAND FAIR EMPLOYMENT PRACTICES ACT – SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT)

1. An injunction:

   e. Enjoining KBP, its officers, successor, and assigns, and all persons in active concert or participation with it, from engaging in any employment practice that discriminates on the basis of sex.

   f. Requiring KBP to pay Plaintiff Staton back pay and other benefits in an amount appropriate to proof at trial.

2. Find that Defendant KBP is liable for sexually harassing and creating a hostile work environment against Plaintiff Staton.

3. An Award of compensatory damages for Plaintiff Staton's past and future pain and suffering and loss of enjoyment of life in an amount appropriate to proof at trial.

4. An Award of punitive damages for Defendant's malicious and intentional or callously and recklessly indifferent conduct in an amount appropriate to proof at trial.

5. An Award of reasonable attorney's fees and costs.

6. An Award of such other just and equitable relief as this court deems fit.

## AS TO COUNT V
### CLAIM OF AMELDA STATON AGAINST KBP FOODS (MARYLAND FAIR EMPLOYMENT PRACTICES ACT – RETALIATION)

1. An injunction:

   g. Enjoining KBP, its officers, successor, and assigns, and all persons in active concert or participation with it, from engaging in any employment practice that retaliates on the basis of protected activity.

   h. Requiring KBP to pay Plaintiff Staton back pay and other benefits in an amount appropriate to proof at trial

2. Find that Defendant KBP is liable for retaliation against Plaintiff Staton.

3. An Award of compensatory damages for Plaintiff Staton's past and future pain and suffering and loss of enjoyment of life in an amount appropriate to proof at trial.

4. An Award of punitive damages for Defendant's malicious and intentional or callously and recklessly indifferent conduct in an amount appropriate to proof at trial.

5. An Award of reasonable attorney's fees and costs.

6. An Award of such other just and equitable relief as this court deems fit.

## AS TO COUNT VI
### PLAINTIFFS' CLAIMS AGTAINST DEFENDANT KBP (NEGLIGENT RETENTION OF EMPLOYEE)

1. Find that Defendant KBP is liable to Plaintiff Staton for the negligent retention of Defendant Goodwin.

2. An Award to Plaintiff Staton of compensatory damages in an amount appropriate to the proof at trial.

3. An Award to Plaintiff Staton of punitive damages in an amount appropriate to the proof at trial.

4. An Award of reasonable attorney's fees and costs.

5. An Award of such other just and equitable relief as this court deems fit.

Respectfully submitted,

_____/s/_____
Aron Zavaro, No. 21675
Guru V. Shanmugamani ("Vijay Mani"),
No. 19147
Linda Hitt Thatcher, No. 415317

THATCHER LAW FIRM, LLC
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, MD 20770

Telephone: (301) 441-1400
Facsimile: (301) 441-9602

*Counsel for Plaintiff*